THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Anonymous,

Petitioner,

-against-

Mark Miller,

Respondent.

24-CV-01360 (RA) (RFT)

**OPINION AND ORDER**

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

On February 22, 2024, Petitioner filed a counseled petition under 28 U.S.C. § 2254 seeking a writ of habeas corpus, asserting that the cooperation and plea agreement he executed in the state court criminal proceedings was unfulfillable and unenforceable. (*See* ECF 1, Petition.) Pending before the Court is Petitioner's submission dated March 18, 2024 in which he identifies himself as a pro se litigant and requests that his petition be stayed and held in abeyance. (*See* ECF 7-1, Motion for Stay.) Respondent opposes. (*See* ECF 14, Resp. Opp.)

After carefully considering Petitioner's request, for the reasons set forth below, Petitioner's motion to hold his petition in abeyance is GRANTED.

**BACKGROUND**[1]

Petitioner was arrested on November 13, 2009 for a burglary and assault in the Bronx, New York in connection with a 73-count indictment. (*See* ECF 1, Petition at 1.) On March 17, 2011, Petitioner entered into a plea agreement with the Bronx County District Attorney's Office and subsequently entered a guilty plea to Count 1 (Predatory Sexual Assault, Penal Law §

[1] For purposes Petitioner's request for a stay, the background facts are derived from the Petition, the exhibits attached thereto, and the parties' submissions.

130.95(1)(b)), a class A-II felony, and Count 32 (Criminal Sexual Act, Penal Law 130.50(1)), a class B felony. (*See* ECF 1, Petition at 7.) The Court allocuted on the stipulated sentence of 11 years' imprisonment with 15 years' post-release supervision. (*See id*. at 1.)

It is undisputed that under the terms of the cooperation agreement, Petitioner was required to provide information about the criminal activity of his co-defendants, which he did in a series of proffers. (*See id*. at 7-11.) Approximately 90 days after entering the guilty plea, Petitioner fired his attorney; through several newly appointed lawyers, he subsequently sought to vacate the plea. (*See id*. at 11-22.) The trial court determined that Petitioner had violated the cooperation agreement by seeking to withdraw the guilty plea and failing to cooperate with state and federal prosecutors. Petitioner was sentenced to concurrent terms of 25 years to life and 25 years' imprisonment, with 20 years of post-release supervision. (*See id*. at 25.)

Petitioner appealed the conviction, primarily arguing that his guilty plea was involuntary and unknowing because the plea agreement made an unfulfillable promise. (*See id.* at 1-2.) On February 16, 2021, the First Department issued an opinion denying Petitioner's appeal. (*See* ECF 1, Ex. B., Record at 1.) The First Department rejected Petitioner's argument for two reasons: first, as a threshold procedural matter the court found that Petitioner failed to preserve the argument that the plea agreement was unfulfillable, and second, on the merits, Petitioner "voluntarily pleaded guilty, in accordance with a fair and enforceable cooperation agreement." (*See id.*) Petitioner timely filed his leave to appeal to the New York Court of Appeals, which leave was denied. (*See* ECF 1, Petition at 3).

Over the last several years Petitioner has filed numerous pro se motions in state court, including a motion to set aside his conviction, a motion to set aside his sentence, a motion to

recuse the judge presiding over the motions, and related motions to reargue and for leave to appeal. (*See* ECF 14, Resp. Opp. at 1 n.1)

On June 30, 2023 Petitioner filed a state resentencing application pursuant to N.Y.C.P.L. § 440.20, seeking relief on the following eight grounds: 1) that the court failed to warn him of the full scope of the direct consequences of his plea, in violation of his right to due process; 2) that his trial attorney had provided ineffective assistance of counsel during the plea hearing; 3) that his subsequent trial attorney had provided ineffective assistance of counsel by failing to challenge his unconstitutional sentencing; 4) that his subsequent trial attorney had provided ineffective assistance of counsel by failing to request the pre-sentencing report and provide it to Petitioner at least 24 hours before sentencing; 5) that his sentencing was improper because it was based on inaccurate information; 6) that false information in the pre-sentence report violated the Eighth Amendment; 7) that his subsequent trial attorney provided ineffective assistance of counsel by failing to secure vacatur of the conviction; and 8) that his subsequent trial attorney provided ineffective assistance of counsel due to an actual conflict of interest. (See ECF 7-1, Ex. A , N.Y.C.P.L. § 440.20 Motion at 22-23.). That motion remains pending in state court.

On February 22, 2024, Petitioner, through counsel, filed a habeas corpus petition under 28 U.S.C. § 2254. (*See* ECF 1, Petition.) On March 6, 2024, the Court ordered Respondent to answer the petition by May 6, 2024 and directed Petitioner to file any reply within 30 days from the date he was served with Respondent's answer. (*See* ECF 5, Order.)

Petitioner submitted a declaration dated March 18, 2024 (and attached exhibits) directly to the Chambers of the Honorable Ronnie Abrams. That declaration was placed on the docket.

(*See* ECF 7-1, Ex. A.) In that submission Petitioner requested that his petition be stayed and held in abeyance while he fully exhausts his state court process for resentencing. (*See id*. at 1.) Petitioner seeks to exhaust three claims currently pending in state court : (1) that the trial court imposed maximum sentences based on false information in violation of the Eighth Amendment, which prohibits sentences that are disproportionate to the crime committed; (2) that the sentence imposed by the trial court for Count 32 (Criminal Sexual Act, Penal Law 130.50(1)) violated his right to due process because he was not informed during the hearing on his plea of the sentencing consequences of pleading to that count; and (3) that his trial counsel provided ineffective assistance by failing to inform him that he could be sentenced to 50 years to life if he was found to be in breach of the plea agreement. (*See id*. at 5-8.)

In his communication with the Court, Petitioner identifies himself as a pro se litigant. (*See id.*) I issued an Order directing Petitioner's current counsel to file a status report addressing the stay request and the status of counsel's representation of Petitioner. (*See* ECF 7, Order.) On April 18, 2024, Petitioner's counsel filed a letter "taking no position on [Petitioner's] desire to move pro se" on additional claims not raised in the counseled petition, but "asking that the Court hold the petition in abeyance such that he might raise, should he choose in a pro se supplement." (ECF 8, Status Report.)

On May 3, 2024, Respondent filed an opposition to the stay request, arguing that there is no "compelling reason to delay these proceedings to await the state court's determination of petitioner's pro se motions." (ECF 14, Opposition to Motion To Stay at 1.) First, Respondent contends that Petitioner has no right to hybrid representation, proceeding both as a pro se litigant and through counsel. (*See id.* at 2.) Second, Respondent contends that Petitioner's

counsel concedes that the claims lack merit by virtue of her strategic decision not to adopt them, which Respondent contends shows that the Petitioner cannot demonstrate good cause for failing to exhaust these claims at the state level. (*See id.* at 3.)

Petitioner submitted a reply dated May 29, 2024. In his reply Petitioner argues that he has now exhausted the claims at issue in state court. (*See* ECF 18, Pet. Reply at 12 n.9.) He also argues that despite Respondent's contentions, Petitioner's counsel's failure to adopt certain arguments in full is not an indication that his pro se claims are frivolous, because the three claims at issue in his stay request were included in footnotes in his counseled Petition. (*See id.* at 1-2.) Petitioner further argues that he had good cause for the delay in filing his appeal because he was unable to review the pre-sentence report thoroughly prior to sentencing and because his initial appellate counsel did not adopt his suggested arguments. (*See id.* at 13-16.)

Respondent filed a letter-reply, claiming that Petitioner's claims have not been exhausted: Respondent said that the state court has represented to the parties that it plans to deny Petitioner's motion but has not yet issued a formal decision. (*See* ECF 19, Letter-Reply.)

**<u>LEGAL STANDARDS FOR STAYS OF HABEAS PETITIONS</u>**

Petitioner filed his Petition pursuant to 28 U.S.C. § 2254, which provides that "a person in custody pursuant to the judgment of a state court" must first exhaust all available remedies in state court before pursuing federal habeas review. 28 U.S.C. § 2254(b)(1)(A). The Court in a habeas case "ha[s] authority to issue stays where such a stay would be a proper exercise of discretion." *Rhines v. Weber*, 544 U.S. 269, 276 (2005) (internal quotation marks and citation omitted). This discretion is limited, however, to circumstances where the Court is presented with a "mixed" petition seeking habeas corpus relief. *Id*. at 271. A mixed petition is one that

contains "some claims that have been exhausted in the state courts and some that have not." *Id.*; *see also Harden v. LaClaire*, No. 07-CV-4592 (LTS) (JCF), 2008 WL 4735231, at *2 (S.D.N.Y. Oct. 27, 2008) ("[D]istrict courts have discretion to stay habeas petitions containing both exhausted and unexhausted claims.").

"State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney General of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001).

A stay is unwarranted in circumstances where a petition includes no unexhausted claims. *See Fernandez v. Ercole*, No. 14-CV-02974 (RA) (HBP), 2017 WL 2364371, at *6 (S.D.N.Y. May 31, 2017). A stay is appropriate when the district court determines that (1) "the petitioner had good cause for his failure to exhaust," (2) "unexhausted claims are potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278.

The Supreme Court did not define "good cause" in the first prong of the *Rhines* test, and the Second Circuit has not yet provided a definition either. District courts have used conflicting definitions. *See Ramdeo v. Phillips*, No. 04-CV-1157 (SLT), 2006 WL 297462, at *5 (E.D.N.Y. Feb. 8, 2006) (collecting cases). However, the Supreme Court mentioned the "good cause" factor in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), noting that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." And the district court in *Rhines* found good cause due to the petitioner's

"reasonabl[e] confus[ion] about whether his claims had been properly exhausted in state court." *Rhines v. Weber*, 408 F. Supp. 2d 844, 848 (D.S.D. 2005); *see also Brown v. Ebert*, No. 05-CV-5579 (DLC) (KNF), 2006 WL 1273830, at *2-4 (S.D.N.Y. May 9, 2006).

To determine whether the second *Rhines* prong is satisfied, a court need not conclusively determine the merits of the unexhausted claim; it needs only consider whether the petitioner's unexhausted claim is plainly meritless. *See Linares v. People of State of N.Y.*, No. 04-CV-2973 (KMW) (KNF), 2008 WL 2115231, at *2 (S.D.N.Y. May 14, 2008). An unexhausted claim is plainly meritless when "it is perfectly clear that the petitioner has no hope of prevailing."

To determine whether the third *Rhines* prong is satisfied, courts look to whether there is any indication a petitioner intentionally caused delay or used improper litigation tactics. Where a petitioner "was prompt in filing both his habeas corpus petition and the instant application for a stay of the petition," courts in this district have found that the petitioner did not engage in dilatory litigation tactics. *See, e.g., Brown*, 2006 WL 1273830, at*3.

## ANALYSIS

### I. Petitioner's Pro Se Request for a Stay

Petitioner, although represented by counsel, submits a pro se request for his petition to be held in abeyance to exhaust claims in state court. While there is no constitutionally protected right to a "hybrid" defense, courts in this Circuit routinely allow hybrid representation in criminal matters. *See Johnstone v. Kelly,* 808 F.2d 214, 216 (2d Cir.1986) ("Although the Constitution prohibits courts from requiring criminal defendants to be defended by counsel, it does not foreclose trial courts from using less overbearing means of ensuring that pro se defendants have adequate legal representation.") I see no reason not to permit

Petitioner to proceed on a hybrid basis in connection with his habeas petition. Accordingly, I will consider Petitioner's pro se submission.

**II. The Stay Request**

A. Ripeness

As a preliminary matter, I must first determine whether the petition is "mixed," containing both exhausted and unexhausted state claims. *Inoa v. Smith*, No. 16-CV-2708 (VEC) (JLC), 2018 WL 4109102, at *2 (S.D.N.Y. Aug. 29, 2018) (denying request for stay as premature because petition was not mixed and the petitioner did not seek leave to amend the petition to add the new claim); *see also Terry v. Conway*, No. 11-CV-2647 (RRM), 2013 WL 4458734, at *2 (E.D.N.Y. Aug. 16, 2013) (holding that where a habeas petition is not mixed, the petitioner's "motion for a stay is premature"); *Clancy v. Phillips*, No. 04-CV-04343 (KMK), 2005 WL 1560485, at *6 (S.D.N.Y. July 1, 2005) (declining to stay the proceeding because "[t]he stay-and-abeyance procedure is available when the Court is confronted by a mixed petition, but no mixed petition is present in this case at this time").

For a constitutional claim to be deemed exhausted, it must have been fairly presented before the appropriate state courts and denied. *See Turner v. Artuz*, 262 F.3d 118, 123 (2d. Cir. 2001). To hold a petition in abeyance to allow the petitioner to exhaust an unexhausted claim, the claim must be both unexhausted and included in the petition. When a petition does not include the unexhausted claim that a petitioner identifies as the basis for a stay, "courts in this circuit have generally required the petitioner first to seek leave to amend the petition to add the new claim before applying the *Rhines* test." *Wilson v. Capra*, 281 F. Supp. 3d 289, 291 (E.D.N.Y.

2017) (citation and alteration omitted); *James v. Keyser,* No. 20-CV-3468 (JPC) (SDA), 2020 WL 7496474, at *4 (S.D.N.Y. Dec. 21, 2020).

Petitioner seeks to exhaust three claims currently pending in state court: (1) that the trial court imposed maximum sentences based on false information in violation of the Eighth Amendment, which prohibits sentences that are disproportionate to the crime committed; (2) that the sentence imposed by the trial court for Count 32 (Criminal Sexual Act, Penal Law 130.50(1)) violated his right to due process because he was not informed during the hearing on this plea of the sentencing consequences of pleading to that count; and (3) that his trial counsel provided ineffective assistance by failing to inform him that he could be sentenced to 50 years to life if he was found to be in breach of the plea agreement. (*See* ECF 7-1, Mot. for Stay at 5-8.)

Petitioner's counsel informed the court that she has "declined to incorporate any aspect of" Petitioner's pro se filings (ECF 8, Status Report), which suggests that the three unexhausted claims on which Petitioner relies to seek a stay are not part of the petition. However, as Petitioner points out, the general substance of those three claims is referenced summarily in footnotes in his counseled petition. (*See* ECF 1, Petition at 8 n.3, 11 n.4, 11 n.5, 51-52 n.11.) In particular, Petitioner's counsel explicitly included the ineffective assistance of counsel argument in the petition. (*See id*. at 51 n.11) ("To the Sixth Amendment argument briefed in Anonymous' direct appeal we add here only one issue: that of Anonymous being informed, at his plea colloquy and in the written cooperation agreement, that were he to violate the terms of the agreement, he would face a penalty of 25 years to life imprisonment only.") "Since [a] claim of ineffective assistance of counsel can turn on the cumulative effect of all of counsel's actions, all

. . . allegations of ineffective assistance should be reviewed together." *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991) (citing *Strickland v. Washington*, 466 U.S. 668, 695-96 (1984)).

After reviewing the petition and the briefing regarding the requested stay, I conclude that the petition sufficiently references the three claims pending before the state court to be considered "mixed" and that the stay request therefore is not premature.

B. The *Rhines* Test

1. Good Cause

Petitioner says that he was confused about whether his appellate counsel would be pursuing the three claims in state court, which he argues provides support for a finding of good cause under the first *Rhines* prong. (*See* ECF 7-1, Mot. for Stay at 4.) Petitioner states that he failed to exhaust the three claims at issue because his prior assigned appellate lawyer "continued to provide [him] with false promises of reviewing his arguments, claims, documents and providing him with her draft briefs to review." (ECF 18, Reply at 14-15.) Petitioner provided several years' worth of correspondence between himself and his former appellate lawyer, demonstrating his confusion and his belief that she would review and submit a collateral challenge in state court on his behalf. (*See* ECF 18, Reply at 15; *id.* Ex. K, Letters.)

Having reviewed the materials, I conclude that Petitioner understood that the three unexhausted claims were ripe for state court review but that he was reasonably confused as to whether his appointed counsel intended to include those issues in a collateral challenge. His confusion about whether his appellate counsel would be pursuing those issues in state court supports a finding of good cause under the first *Rhines* prong. *See, e.g., Whitley v. Ercole,* 509 F. Supp. 2d 410, 419 (S.D.N.Y. 2007) (finding that, as a general matter, "a petitioner's showing of

his confusion, if reasonable, concerning the delay in his state filing would satisfy the *Rhines* requirement of 'good cause'").

2. Potential Merit of Petitioner's Unexhausted Claims

The second *Rhines* prong requires the petitioner to show that the unexhausted claims are not "plainly meritless." *Rhines*, 544 U.S. at 277.

I conclude that Petitioner's first claim – that the trial court imposed maximum sentences based on false information in violation of the Eighth Amendment – seems plainly meritless. The Eighth Amendment prohibits sentences that are disproportionate to the crime committed. *See Lockyer v. Andrade,* 538 U.S. 63, 72-73 (2003) (finding that the Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction); *United States v. Bullock*, 550 F.3d 247, 252 (2d Cir. 2008) (same). Petitioner's sentence fell within the 25-years-to-life range set by the state legislature. *See* Penal Law §§ 130.95(1)(b); 130.50(1), 70.00(2)(a); 70.00(3)(ii). "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam) (citation omitted); *see also Pinero v. Grenier*, 519 F. Supp. 2d 360, 371 (S.D.N.Y. 2007).

I believe that Petitioner's second claim – that the sentence imposed by the trial court for Count 32 violated his right to due process on the ground that he was not informed by the judge during the plea hearing of the sentencing consequences – also seems plainly meritless under federal law. The Supreme Court has held that, for a guilty plea to be voluntarily made, the defendant must be "fully aware of the direct consequences" of the plea. *Brady v. United States*, 397 U.S. 742, 755 (1970) (internal quotation marks and citation omitted). The trial court

informed Petitioner "on three separate occasions during the plea hearing that his maximum sentence exposure was 25 years to life." (ECF 7-1, Mot. for Stay at 8-9; ECF 7-1, Ex. A., Aff. in Support of Mot. To Set Aside at 12-13). And Petitioner's sentence fell within that range. *See* N.Y. Penal Law § 70.00(3)(ii). "For a class A-II felony, such minimum period shall not be less than three years nor more than eight years four months, except that for the class A-II felony of predatory sexual assault as defined in section 130.95 of this chapter or the class A-II felony of predatory sexual assault against a child as defined in section 130.96 of this chapter, such minimum period shall be not less than ten years nor more than twenty-five years"); *id.* § 70.02(3)(a) ("The term of a determinate sentence for a violent felony offense must be fixed by the court as follows . . . . (a) For a class B felony, the term must be at least five years and must not exceed twenty-five years[.]"); § 70.45(2-a) ("The period of post-release supervision for a determinate sentence imposed for a felony sex offense as defined in paragraph (a) of subdivision one of section 70.80 of this article shall be as follows: . . . (c) not less than five years nor more than twenty years whenever a determinate sentence of imprisonment is imposed pursuant to subdivision four of section 70.80 of this article upon a conviction of a class B felony sex offense.").

Petitioner argues that he was unaware that there was a possibility of an additional sentence of 20 years of post-release supervision. (*See* ECF 1, Petition at 51 n. 11; ECF 7-1, Ex. A, Aff. in Support of Mot. To Set Aside at 17-18.) However, the Supreme Court has not ruled that the imposition of a term of supervised release is a "direct consequence" of which a defendant must, as a matter of constitutional law, be advised prior to a guilty plea. *See Pignataro v. Poole*, 381 Fed. App'x 46, 50 (2d Cir. 2010) ("[I]n the absence of a Supreme Court ruling on the issue of

whether [post release supervision] (or a similar state-imposed post-imprisonment term of supervision, such as parole) could be a direct consequence of a guilty plea, the trial court's acceptance of Appellant's guilty plea was not contrary to or an unreasonable application of federal law."); *see also Redcross v. Keller*, No. 06-CV-3882 (KMK) (GAY), 2010 WL 3219320, at *5 (S.D.N .Y. Aug. 12, 2010) (collecting cases); *Lue v. Marshall*, No. 08-CV-3834 (DAB), 2014 WL 787327, at *16 (S.D.N.Y. Feb. 24, 2014) (finding that "the Supreme Court has not established that the imposition of a term of supervised release is a 'direct consequence' of which a defendant must be advised prior to his plea").

In his state court C.P.L. § 440.20 motion, Petitioner relies on New York State court decisions holding that a term of supervised release is a direct consequence of pleading guilty, meaning that, as a matter of New York State law, state courts must allocute defendants at plea hearings on any terms relating to supervised release. (*See* ECF 7, Ex. A., Aff. in Support of Mot. To Set Aside at 15-16). But "state court decisions interpreting and applying New York State law are not relevant to the question of whether the state court's denial of this claim was contrary to clearly established federal law[.]" *See Lue*, 2014 WL 787327, at*16. Thus, the claim seems plainly meritless as a matter of federal law.[2]

[2] In his motion for a stay, Petitioner also cites to *Ball v. U.S.*, 470 U.S. 856 (1985), which is inapposite. In *Ball,* the Supreme Court determined that the accused cannot be subjected to two separate convictions or sentences where there is a multiple-count indictment against the accused involving the same weapon and where a single act establishes that weapon's receipt and possession. *Id.* at 865. Here, Petitioner was sentenced to separate counts for separate criminal acts to run concurrently because the conduct involved the same complainant. (*See* ECF 1, Ex. A-2, Record at A-407-09, A-427-29.) Specifically, he was sentenced for Count 1, Predatory Sexual Assault under N.Y. Penal Law § 130.95(1)(b) for engaging in a criminal sexual act and in the course thereof using a knife, which is a dangerous instrument, and separately for Count 32, Criminal Sexual Act under N. Y. Penal Law § 130.50(1) for engaging in a separate criminal sexual

With respect to the ineffective assistance of counsel claim, I begin with an analysis of the Sixth Amendment, which guarantees a criminal defendant the right to effective representation. *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). In evaluating a claim that counsel's representation did not meet the Sixth Amendment constitutional minimum, courts "indulge a strong presumption that counsel's conduct f[ell] within the wide range of professional assistance." *Strickland*, 466 U.S. at 689. To overcome that presumption, a petitioner must establish both parts of the *Strickland* test. A petitioner must first show that counsel's performance "fell below an objective standard of reasonableness," *id.* at 688. A petitioner must then demonstrate that there is a "reasonable probability" that, but for counsel's error, the outcome would have been different. *Id.* at 694. Courts apply this standard in both the trial and appellate contexts. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).

"Defense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." *Pham v. U.S.*, 317 F.3d 178, 182 (2d Cir. 2003). Petitioner admits that counsel informed him prior to executing the plea agreement that he faced a 25-years-to-life indeterminate sentence but asserts that counsel did not advise him that he could also face an additional 25-year determinate sentence with 20 years of supervised release if he was found to be in breach of the plea agreement. (*See* ECF 7-1, Mot. for Stay at 11-12, 16). "When a plea offer is made and there is a reasonable probability that the defendant is uncertain about the sentencing exposure he faces, whether or not he accepts the plea, a lawyer unquestionably has a duty to inform his client of the

---

act. (*See id.* at A-407-12; *id.* at A-427-29; *see also* ECF 1, Ex. A-1, Record at A-007- 044.)

sentencing exposure he faces if he accepts the plea offer and if he does not." *Carrion v. Smith,* 644 F. Supp. 2d 452, 467 (S.D.N.Y. 2009), *aff'd* 365 Fed. App's 278 (2d Cir. 2010).

Petitioner cites to a June 16, 2011 letter (ECF 7-1, Ex. C) – written after he pleaded guilty – in which counsel repeatedly stated that a violation of the agreement would result in a 25-years-to-life state prison sentence but referenced a consecutive sentencing exposure only once. (*See* ECF 7-1, Ex. A.) Petitioner says that this was the first time he learned about the possibility of a sentence of 50 years to life. (*See* ECF 1, Petition at 11 nn.4-5; *id.* at 54 n.13.) Applying the first prong of the *Strickland* standard, I conclude that a failure of Petitioner's counsel to specifically inform him before he entered the plea agreement of the maximum sentencing consequence of 50 years to life if he was found to be in breach of the plea agreement could potentially rise to the level of constitutionally deficient representation. *See Carrion,* 644 F. Supp. 2d at 471.

The second *Strickland* prong requires a showing of prejudice, which a defendant suffers "if there is a reasonable probability that his reliance on counsel's ineffective assistance affected the outcome of the proceedings." *Carrion*, 644 F. Supp. 2d at 471. Petitioner has the potential to show that, because he relied on counsel's advice and the representation that he would face a maximum of 25 years to life if he was found to be in breach of the agreement, he accepted the plea agreement and thereby changed the course of the proceedings. Petitioner had previously rejected a plea agreement from the government; it is conceivable that he would be able to show that he would have rejected the later agreement but for counsel's incorrect representation of his maximum possible sentence if he was found to be in violation of the agreement.

Without deciding whether this claim is sufficiently meritorious as to warrant habeas relief, I conclude that there is the potential for Petitioner to satisfy the *Strickland* test and thus that the ineffective assistance of counsel claim is not plainly meritless.

3. Dilatory Litigation Tactics

I also conclude that the third *Rhines* prong is satisfied. Respondent asserts that "there is no compelling reason to delay these proceedings to await the state court's determination of petitioner's repetitive and frivolous pro se litigation, particularly in light of the fact that his attorney has not adopted the pro se claims being litigated in state court" and that Petitioner has unsuccessfully filed numerous pro se motions in state court. (ECF 14, Resp. Opp. at 1 n.1.) Although there was some delay in Petitioner's exhaustion of his claims, Petitioner was prompt in filing both his habeas corpus petition and this pro se application for a stay of the petition. Accordingly, I conclude that Petitioner has not engaged in abusive or intentionally dilatory litigation tactics that would warrant denying a stay under *Rhines. See Brown*, 2006 WL 1273830, at*3 (noting that the petitioner had not engaged in dilatory litigation tactics because he had promptly filed his habeas corpus petition and the application for a stay of the petition).

## CONCLUSION

After carefully considering Petitioner's application, for the reasons set forth above, I find that Petitioner's motion to stay the petition pending the state court's resolution of Petitioner's Section 440.20 motion should be GRANTED. Petitioner shall provide the Court with a status update within 30 days of any decision on the Section 440.20 motion. The Clerk of Court is respectfully directed to terminate ECF 20.

DATED: July 11, 2024
New York, New York

SO ORDERED.

______________________________
**ROBYN F. TARNOFSKY**
United States Magistrate Judge